1
2
3
4
5

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RICHARD PHILLIPS, in his capacity as the administrator of the ESTATE OF TROY PHILLIPS,; TIFFANY PHILLIPS,**<br><br>**Plaintiffs,**<br><br>**vs.**<br><br>**COUNTY OF FRESNO; MARGARET MIMS; CORRECTIONAL OFFICER L. HER # 9899; CORRECTIONAL OFFICER CASTRO; JOHN DOE AND RICHARD ROE, individually and in their official capacities as correctional and classification officers of the Fresno County Sheriff's Department; EDWARD MORENO, M.D.; GEORGE LAIRD; PRATAP NARAYAN; NANCY POE and CARL COE, individually and in their official capacities as health care workers in the Fresno County jail system; and DOES 1-50,**<br><br>**Defendants.** | **1:13-cv-0538  AWI BAM**<br><br><br>**MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br><br>**Doc. # 21** |

This is an action for damages by plaintiffs Tiffany Phillips and Richard Phillips in his capacity as administrator of the Estate of Troy Phillips ("Plaintiffs") against  defendants County of Fresno ("County"), various officials and officers of the Fresno County Sheriff's Department and various healthcare workers employed by the County (collectively, "Defendants").  This action arises out of the death of Troy Phillips ("Decedent") as a result of injuries he sustained at

the hands of a cell-mate while in the custody of the Fresno County Sheriff's Department as a pre-trial detainee.   Currently before the court is Defendants' motion to dismiss Plaintiffs' complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.   Federal subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331.  Venue is proper in this court.

## FACTUAL BACKGROUND

The following facts are drawn from Plaintiffs' complaint and are taken as true for purposes of this motion.  At the time of the events giving rise to this action, Decedent was a 47 year-old male who is described as "having learning disabilities and, on occasion [. . .] issues with drugs."  Doc. # 2 at 9:15-16.  Otherwise, Decedent is alleged to have had no other remarkable mental problems and had no tendencies toward violent behavior.  Decedent was arrested on a charge of second-degree burglary on December 15, 2011, and was detained at the Fresno County Jail ("Jail") located at 1225 "M" Street in Fresno.  The complaint states that during the entire period of his custody at the Jail, Decedent remained a pre-trial detainee awaiting "a hearing for a court-ordered mental competency exam."  Doc. # 2 at 9:22.

Decedent was killed by his cell-mate, Jose Guadalupe Cuevas ("Cuevas").  Plaintiffs' complaint alleges a number of facts to support their contention that Cuevas was known or should have been known to Jail authorities to be mentally disturbed, unpredictable and having a propensity for violent clashes with cell-mates.  The following summarizes the facts presented in the complaint.  Cuevas was also a pre-trial detainee in custody for probation violations.  Cuevas had been convicted in July of 2011 on a charge of first-degree burglary.  Cuevas was released on probation on October 13, 2011, under orders that included the requirement that he obtain mental health treatment.  He was arrested two days after he was release on probation for another burglary.  With the exception of the two days of unsuccessful probation, Cuevas was in the custody of Fresno County Jail continuously from July 2011 through February 14, 2012, the day Cuevas committed the assault that caused Decedent's death.  The complaint alleges Decedent and Cuevas were housed together because both were considered "mentally ill."

Plaintiffs contend that Cuevas's conduct while in custody between July 2011 and the assault on Decedent on February 14, 2012, provided an obvious basis to understand Cuevas was mentally disturbed, unpredictable and violence-prone.  A fellow inmate named Quentin Hall ("Hall") who witnessed Cuevas's behavior prior to and during the time of Decedent's placement with Cuevas reported that he saw "Cuevas fighting with his previous cellmate, Ruben Ramos.  A few months ago, I heard [Cuevas] with another cellmate, and I saw this cellmate taken away in a wheelchair."  Doc. # 2 at 11:18-20.  In addition, Hall stated that "he witnessed that [Cuevas] 'defecates and urinates on himself and does not use toilet paper.'"  Id. at 10:26-11:1.  Apparently Cuevas's behavior was noticed by Jail guards who joked about the "sex smell" when they walked by Cuevas's cell.  Hall, because of his concerns about Cuevas's mental health, made both written and oral requests for mental health treatment for Cuevas.  The complaint does not state over what time period the requests were made.

On February 14, 2012, Cuevas attacked Decedent by stabbing him in the neck with a short pencil approximately 22 times causing massive bleeding.  Decedent was removed to a hospital where he died approximately a week later.

A second group of facts alleged in the complaint pertain to the response of Jail staff to the attack by Cuevas on Decedent.  The attack occurred on the morning of February 14, 2012.  Other inmates heard the commotion, heard Decedent calling for help and used their intercoms to summon jail staff.  The complaint alleges that Cuevas himself used the intercom in the cell to communicate with officers to tell them that he was attacking Decedent, that he had the Decedent down and was "about to hit him again."  Doc. #2 at 12:11.  According to Hall's account, the Jail staff spent several minutes questioning Cuevas rather than sending officers to respond to the disturbance while Cuevas continued his attack on Decedent.  After about five minutes, two officers arrived and radioed for further help to respond to a "187," which is apparently a police radio code for a homicide.  When the other officers arrived, Decedent was on the floor in a pool of blood and Cuevas was no longer attacking.  Cuevas was removed from the cell and the cell

door was closed leaving Decedent inside.  Apparently no personnel remained inside the cell to tend to Decedent's wounds.

According to Hall, Jail medical personnel did not arrive until some three to five minutes after officers removed Cuevas from the cell.  Hall reports that the medical staff who did respond did not appear to know what to do.  Hall's account states that Jail officers and medical personnel stood outside the cell and took photographs of the scene inside, but no one from the Jail entered the cell.  The complaint alleges that and ambulance arrived during the time the Jail staff were taking pictures of the cell, but that the paramedics arrived on the cell block "after ten minutes." Doc. # 2 at 13:10.  It was only after the paramedics arrived that Decedent was removed from the cell and oxygen and other first aid measures were administered.  The paramedics determined that Decedent was bleeding internally and had significant trauma and needed to be evacuated to a hospital.  After an additional ten minutes fire department personnel arrived with a gurney and Decedent was removed to Community Regional Medical Center.  Decedent died after being removed from life support one week later.

Although there is some of ambiguity with respect to the timing of events, the court, making all inferences in Plaintiffs' favor, deems the complaint to allege the following:  (1)  Jail personnel were notified by intercom of the attack by Cuevas on Decedent shortly after the attack commenced;  (2) the first Jail officers arrived not earlier than five minutes after the attack commenced, and possibly later;  (3) Cuevas was not removed from the cell until sometime later when back-up officers arrived;  (4)  Decedent was left unattended in his cell for three to five minutes following Cuevas's removal and received no hands-on evaluation or aid until at least 13 to 15 minutes after the removal of Cuevas from the cell;  (5)  Paramedics at the scene lacked the ability to evacuate Decedent to a hospital and that ability was not available for an additional 10 minutes or approximately 25 to 30 minutes from the time Cuevas was removed from the cell.

//

//

//

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PROCEDURAL HISTORY AND CLAIMS ALLEGED**

The complaint was fined on April 15, 2013.  A total of ten claims for relief are alleged, although the claims are organized in a way that is somewhat unusual in this court.  The first claim is alleged against all Defendants except County and combines all constitutional claims for violation of Decedent's rights against all individual Defendants.  Those claims include violations of Decedent's right to prompt medical attention under "the Due Process Clause of the Fifth and Fourteenth Amendments;" violation of Decedent's rights against cruel and unusual punishment under the Eighth and Fourteenth Amendments; Decedent's right against being exposed to a danger created by Defendants in violation of the Fourteenth Amendment; the right to be "free from interference with the zone of privacy, as protected by the Fourth and Ninth Amendments . . ." ; and the "right to be free from governmental interference with family relationships as protected by the First and Fourteenth Amendments."  Doc. # 2 at 18:17-20.

Plaintiffs' second and third claims for relief are alleged against the County and against County officials and supervisorial personnel.  Plaintiffs' second claim for relief alleges County liability under 42 U.S.C. § 1983 for all violations alleged in the first claim for relief on a theory that customs, policies and practices instituted, approved or condoned by the entity Defendant resulted in violations of Decedent's constitutional rights.  Plaintiffs' third claim for relief similarly alleges supervisory and county liability for the constitutional violations suffered by Decedent on a theory of failure to adequately train, monitor and discipline.  Plaintiffs' fourth claim for relief alleges violations of the Americans with Disabilities Act ("ADA") based on Decedent's alleged learning disability against all Defendants.

Plaintiffs' remaining claims for relief – claims five through ten – are claims under California state law.  In order, those claims allege wrongful death against all Defendants, wrongful death – survival against all Defendants, professional negligence against the supervisory employees of the Jail healthcare system and against the Jail healthcare responders and against County, general negligence against County and the Defendant Officers, violation of California Civil Code § 52.1 against all Defendants, and "breach of mandatory duty" against County.

Defendants' motion to dismiss was filed on June 11, 2013.  Plaintiffs' opposition was filed on July 8, 2013, and Defendants reply was filed on July 15, 2013.  The matter was taken under submission as of July 22, 2013.

**LEGAL STANDARD**

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure can be based on the failure to allege a cognizable legal theory or the failure to allege sufficient facts under a cognizable legal theory.  Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir.1984).  To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must set forth factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("Twombly").  While a court considering a motion to dismiss must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), and must construe the pleading in the light most favorable to the party opposing the motion, and resolve factual disputes in the pleader's favor, Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969), the allegations must be factual in nature.  See Twombly, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").  The pleading standard set by Rule 8 of the Federal Rules of Civil Procedure "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) ("Iqbal").

The Ninth Circuit follows the methodological approach set forth in Iqbal for the assessment of a plaintiff's complaint:

> "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

Moss v. U.S. Secret Service, 572 F.3d 962, 970 (9th Cir. 2009) (quoting Iqbal, 129 S.Ct. at 1950).

## DISCUSSION

At the outset, the court feels that a few comments regarding the structure of Plaintiffs' complaint are necessary.  As will be apparent in the discussion that follows, the analysis of claims set forth in the complaint requires a good deal more interpretation than is beneficial for either the court or the parties.  It is not the court's function to dictate style, nor is it the court's purpose to scold, but the court is of the opinion that the point it wishes to make is best made by way of example.  For that example, the first portion of Plaintiffs' first claim for relief will suffice:

> 66.  In doing the acts complained of, [D]efendants acted under the color of law to deprive [Decedent] of certain constitutionally protected rights, including, but not limited to:
>
>> a.  The right to prompt medical attention while incarcerated as guaranteed by the Due Process Clause of the Fifth and Fourteenth Amendment to the United States Constitution.

Doc. #2 at 18:7-10.

Although Rule 8(a) of the Federal Rules of Civil Procedure establishes what is usually referred to as a "liberal pleading standard," it remains a requirement that a "claim for relief" "provide a short and plaint statement [. . .] showing that the pleader is entitled to relief."  Rule 8(a)(2).  In this regard, it is important to note that "facts" listed in the section labeled "Facts" are not claims for relief, they are simply facts.  The claim above that the court uses as an example alleges simply that Decedent's Due Process rights were violated.  This is a mere legal conclusion, not a demonstration of entitlement to relief.  It is not up to the court or to the opposing party to sift through facts to determine which acts by which Defendants forms the basis of Plaintiffs' claim.  It is not clear whether Plaintiffs are alleging that Decedent's medical care was delayed or that Cuevas's mental health care was delayed.  In addition, the court is at a loss to see what Plaintiffs mean when they state that Decedent suffered the violation of constitutional rights "not limited to" the ones listed in the claim for relief.

The purpose of the complaint is to provide the opposing party with fair notice of the claim against it.  Lynn v. Sheet Metal Workers' Intern. Ass'n,  804 F.2d 1472, 1482 (9th Cir.

1986).  Where there are multiple transactions or occurrences, Plaintiffs are required to set forth separate claims for relief so that clarity is maintained.  <u>Bautista v. Los Angeles County</u>, 216 F.3d 837, 840-41 (9th Cir. 2000).  The court is of the opinion that the effort necessary to construe Plaintiffs' claims and to analyze Defendants motion to dismiss consistent with the court's construal of the claims may serve the court's need to conserve its limited resources in that it may help assure that any further amendment of pleadings will correct the ambiguities that the court resolves in a way Plaintiffs may not have intended.  With that in mind, the court will proceed to construe Plaintiffs' claims to the extent such construal seems fair and proper and analyze the merits of Defendants' motion to dismiss consistent with whatever construal of claims the court has applied.  Rule 8(e).

### I.  Plaintiffs' First Claim for Relief

The court notes at the outset that Plaintiffs' first claim for relief alleges constitutional violations that are not addressed by the parties in Defendants' motion to dismiss or in Plaintiffs' opposition.  Specifically, neither party appears to address Plaintiffs' claims of Fourth, Fifth and Ninth Amendment violations.  During the entirety of the time that is relevant to this action, Decedent was a pretrial detainee and, as will be discussed in some detail *infra*, the harms that he is alleged to have suffered are redressable, if at all, under the Due Process Clause of the Fourteenth Amendment.  Because neither party has made mention of Plaintiffs' claims under the Fourth, Fifth and Ninth Amendments, and because the court finds there is no readily apparent connection between the protections afforded by those Amendments and the harms Decedent suffered, the court deems those claims to have been abandoned.

The second notable feature of Plaintiffs' first claim for relief is that the claim appears to be alleged against both supervisory and non-supervisory personnel without any facts alleging that the supervisory actively participated in the conduct that is complained of .  Rather, Plaintiffs' second and third claims for relief appear to set forth claims for supervisory liability based on policy, custom or practice (second claim for relief) or based on failure to train supervise or discipline (third claim for relief.)  Because the allegations set forth in Plaintiffs' first claim for relief do not implicate supervisory Defendants, the court deems Plaintiffs' first claim

for relief to allege liability pursuant to 42 U.S.C. § 1983 against the non-supervisory Jail and County personnel who actually participated in the conduct complained of.

Plaintiffs' first claim for relief is also remarkable in that there are two interactions alleged that give rise to two separate constitutional claims against the individual Defendants. The first interaction is the decision to house Decedent with an individual who was allegedly known by Jail staff to be a danger to others in violation of Decedent's Fourteenth Amendment Right not to be placed in a position where attack by another inmate was reasonably foreseeable. The second is failure of Jail personnel, both medical and non-medical to provide medical care for Decedent's immediate and substantial medical needs.[1]  The court will consider each in turn.

### A.  Failure to Protect

Under the Due Process Clause of the Fourteenth Amendment, involuntarily committed persons retain substantive liberty interests, which include at least the right to adequate food, shelter, clothing and medical care; safe conditions of confinement; and freedom from unnecessary bodily restraint.  Youngberg v. Romeo, 457 U.S. 307, 315-316 (1982).  Among the rights that inure to the person in custody is a right to be protected from the violent acts of other inmates.  See Farmer v. Brennan, 511 U.S. 825, 833 (1994) ("prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners").  To determine whether the nature and extent of an infringement of one of these liberty interests rises to the level of a due process violation, a court must balance the individual's liberty interest against the relevant state interests.  Id. at 320-321.  See also, Sneling v. Young, 531 U.S. 250, 265 (2001).  In general, "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'"  Bell v. Wolfish, 441 U.S. 520, 539 (1979).

---

[1]   To the extent Defendants' motion to dismiss and Plaintiffs' opposition tend to suggest that Plaintiffs' first claim for relief alleges a claim against the individual Defendants for Due Process violation based on the failure to adequately diagnose or treat Cuevas's mental condition, the court finds that claim is not expressed there.  The court will discuss whether Plaintiffs have adequately alleged such claim within their second claim for relief, infra.

The Due Process Clause of the Fourteenth Amendment "protects a pretrial detainee from the use of excessive force that amounts to punishment."  Graham v. Connor, 490 U.S. 386, 395 n.10 (1989).  The Due Process Clause has historically been used to protect against *deliberate* decisions by "government officials to deprive a person of his life, liberty or property."  Daniels v. Wilson, 474 U.S. 327, 331 (1986).  In the context of the person in custody in a jail or prison, the conduct of officials that gives rise to liability under 42 U.S.C. § 1983 is conduct amounting to "deliberate indifference."  Redman v. City of San Diego, 942 F.2d 1435, 1441 (9th Cir. 1991).  While the discussion in Redman makes it clear that the meaning of "deliberate indifference" varies depending on the context in which the alleged violation occurs, the standard applies to all allegations of constitutional violation within the jail or prison context.  The decision in Redman is particulary instructive with regard to Plaintiffs' claim for failure to protect because, like the case at bar, it dealt with the decision of jail officials to house a pretrial detainee in a cell occupied by an individual known to be sexually and physically assaultive.  Id. at 1437-1438.  The Redman court noted that the definition of 'deliberate indifference" set forth in Berg v. Kinchloe, 942 F.2d 457, 459 (9th Cir. 1986) is applicable in situations such as this where an in-custody detainee alleges violation of the Fourteenth Amendment Due Process rights.  The Redman court quoted Berg as follows:

> The "deliberate indifference" standard requires a finding of some degree of "individual culpability," but does not require an express intent to punish.  The standard does not require that the guard or official believe to a moral certainty that one inmate intends to attack another at a given place at a time certain before that officer is obligated to take steps to prevent such an assault.  But, on the other hand, we must have more than a mere suspicion that an attack will occur.

Redman, 942 F.2d at 1442 (quoting Berg, 794 F.2d at 459).

Defendants argue with respect to Plaintiffs' first claim for relief that Plaintiffs' complaint lacks facts that show that Cuevas was a known risk for violent interactions with cell mates.  In this regard, Defendants note that there was no history of conflict between Decedent and Cuevas and that there was no "documented" history of unprovoked assault or violent crime by Cuevas.

The first assertion is not particularly relevant and the second is un-supported in light of the facts

pled in Plaintiffs' complaint.  The complaint alleges that Cuevas had inflicted substantial injury

on a previous cell-mate and that the Jail officials were aware of the fact because they removed

Cuevas' then cell-mate in a wheelchair.  Whether Cuevas' attack was documented or whether it

was unprovoked is of little concern given that the court must resolve any ambiguity in the facts

alleged in favor of Plaintiffs.  Defendants also contend, without any legal support, that Cuevas's

alleged tendency to defecate and urinate on himself and to generally maintain anti-social

hygienic practices, although aberrant, "by itself, does nothing to plead 'deliberate indifference'

to a known threat of violence."  Doc. 21 at 16:2-3.

The flaw in Defendants' argument is that, for purposes of a motion to dismiss, Plaintiffs

need not provide any facts that individually establish that Cuevas represented a known threat of

violence.  It is sufficient at the pleading stage that all the facts taken together and taken as true

present sufficient evidence upon which a jury could reach a verdict in Plaintiffs' favor.

Essentially, Defendants' arguments with regard to Plaintiffs' Due Process claims against the

individual Defendants are a form of sufficiency of the evidence argument which, in the context

of a motion to dismiss, is not persuasive.  Plaintiffs' complaint alleges that Jail personnel knew

of Cuevas's violent tendencies because of injuries caused to a prior cell-mate and knew of

behavior indicating mental instability at a minimum.  At the pleading stage, this is sufficient to

withstand Defendants' motion to dismiss.

### B.  Failure to Respond to Decedent's Medical Needs

The "deliberate indifference" standard applies as well to Plaintiffs' claim for failure to

provide medical care.  In the context of the incarcerated person, the formulation is "deliberate

indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 104 (1976).  The rights

of a pretrial detainee with respect to access to necessary medical care are at least as

comprehensive under Fourteenth Amendment Due Process as for the convicted prisoner under

the Eighth Amendment.  See Bell, 441 U.S. at 535 n.16.  In the Eighth Amendment context, the

"deliberate indifference" standard involves an objective and a subjective prong.  First, the

alleged deprivation must be, in objective terms, "sufficiently serious."  Farmer v. Brennan, 511

U.S. 825, 834 (1994).  Second, the prison official must act with a "sufficiently culpable state of

mind," which entails more than mere negligence, but less than conduct undertaken for the very

purpose of causing harm.  Id. at 837.

As to the acts of the individual Defendants who were actually present at the scene of

events giving rise to this action, little discussion is needed.  Whether or not Jail officials

responded timely in the first instance to notice that an attack on Decedent was underway, it is

alleged that the respondents removed Cuevas from the cell and then left Decedent alone, without

any further evaluation or care in the face of an obviously grave level of injury sustained.  The

fact that Decedent was lying on the floor in a pool of blood is sufficient at this pleading stage to

satisfy the objective portion of the Due Process claim.  The fact that the severity of the injury

was apparent and that those who responded initially, left Decedent alone without evaluation or

monitoring of an obviously serious situation is sufficient to establish the subjective prong.  In

addition, the allegation of further delay until Decedent was finally evacuated to the hospital

provides additional bases for a finder of fact to infer the necessary subjective state of mind.

In summary, the court construes Plaintiffs' first claim for relief to allege a single claim

for relief for violation of Decedent's right to life under the Substantive Due Process Clause of

the Fourteenth Amendment against all individual Defendants who actually participated in the

events giving rise to this action.  Consistent with Rule 8(d)(2) of the Federal Rules of Civil

Procedure, the court construes Plaintiffs' first claim for relief as alleging the claim for Due

Process violation on two alternative legal theories – that Defendants were deliberately indifferent

to Decedent's Fourteenth Amendment rights when they allowed him to be co-housed with Cuevas and that they were deliberately indifferent to Decedent's immediate and substantial medical needs.

## II.      Second and Third Claims for Relief – Entity and Supervisor Liability

Plaintiffs' second and third claims for relief allege entity and supervisorial liability against Defendants County of Fresno and individual Defendants Mims, Gattie, Hill, Moreno, Laird, and Narayan.  At the time of the events alleged, Defendant Mims was the Sheriff of Fresno County, Defendant Gattie was the Assistant County Sheriff, Defendant Hill was in charge of the Detention Programs & Services Bureau for the County, Defendant Moreno was the Director of Fresno County Department of Public Health ("FCDPH"), Defendant Laird was a Division Manager of the FCDPH, and Defendant Naryan was the Medical Director of the FCDPH.  None of these individual Defendants is alleged to have had any direct participatory role in the events giving rise to Decedent's harms.

Generally, a governmental entity is liable only for the actions of "its lawmakers or by those whose edicts or acts may fairly be said to represent official policy."  Monell v. Dep't of Soc. Services, 436 U.S. 658, 694 (1978).  "To hold a local government liable for an official's conduct, a plaintiff must first establish that the official (1) had final policymaking authority 'concerning the action alleged to have caused the particular constitutional or statutory violation at issue' and (2) was the policymaker for the local governing body for the purposes of the particular act."  Weiner v. San Diego County, 210 F.3d 1025, 1028 (9th Cir.2000).  A governmental entity "is not liable for the random acts or isolated incidents of unconstitutional action by a non-policymaking employee. [Citations.]"  Sepatis v. City and County of San Francisco, 217 F.Supp.2d 992, 1005 (N.D. Cal. 2002).  To impose liability against a county for a violation of constitutional rights on the basis of official policy or procedure, a plaintiff must show: (1) that

plaintiff was deprived of a constitutional right; (2) that the municipality had a policy; (3) that this policy amounted to deliberate indifference of plaintiff's constitutional rights; and (4) that the policy was the moving force behind the constitutional violation."  Id. (citing Plumeau v. Sch. Dist. #40 County of Yamhill, 130 F.3d 432, 438 (9th Cir. 1997).

Case authority in this circuit has broadened the meaning of "policy" such that a plaintiff may establish municipal liability "by demonstrating that (1) the constitutional tort was the result of a 'longstanding practice or custom which constitutes the standard operating procedure of the local government entity;' (2) the tortfeasor was an official whose acts fairly represent official policy such that the challenged action constituted official policy; or (3) an official with final policy-making authority 'delegated that authority to, or ratified the decision of, a subordinate.' [Citation]"  Price v. Sery, 513 F.3d 962, 966 (9th Cir. 2008) (quoting Ulrich v. City & County of San Francisco, 308 F.3d 968, 984-985 (9th Cir. 2002).  Further, a policy "may be inferred from widespread practices or 'evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded.'"  Nadell v. Las Vegas Metro. Police Dept., 268 F.3d 924, 929 (9th Cir. 2001) (quoting Gillette v. Delmore, 979 F.2d 1342, 1349 (9th Cir. 1992).  "A plaintiff need not show that a municipality affirmatively encouraged officers to take the lives of citizens; rather a municipality may be liable under Section 1983 for constitutional injuries inflicted by its officers if it fails to adequately guard against such injuries through training and supervision."  Perrin v. Gentner, 177 F.Supp.2d 1115, 1123 (D. Nev. 2001).  "A municipality will be held to a 'constructive notice' standard for failing to take corrective measures where information about officer misconduct plainly indicates a need for such measures."  Id.

### A.  Liability based on Policy, Custom, Practice

Plaintiffs' second claim for entity and supervisory liability is close to the line that divides

a claim that adequately alleges underlying facts and one that relies on legal conclusions dressed as fact.  The claim itself consists essentially of the recitation of categories of conduct that were allegedly performed deficiently at unspecified times because of the existence of unspecified policies or procedures or alleged but undocumented instances where such deficient conduct was condoned.  For example, Plaintiffs' second claim alleges in summary fashion that Defendants undertook constitutionally deficient diagnosis (presumably of mental disorders), referral for treatment, tracking, delivery and administration of medications, medical record keeping, and formulation of medical treatment plains, without any mention of facts, either in the claim itself or in the factual summary, that pertain directly to any of these activities.  See Doc. # 2 at ¶ 70.  Although Plaintiffs' complaint fails to allege any specific past instances of deficient conduct in the categories of activities listed, the complaint alleges that a case currently pending before another Judge in this court alleges class action claims for constitutional and statutory violations arising out of similar deficient conduct.

Plaintiffs go to some lengths to point out that Fresno County Jail, at the time of events complained of here, housed far more inmates that it was designed or intended to house.  Plaintiffs point out that realignment of prison populations under AB 109 has exacerbated the problem of Jail overcrowding significantly and the result is a Jail that is very significantly overcrowded and understaffed.  At paragraph 50 of the complaint, Plaintiffs allege that Hill "admitted to the Fresno Bee that the [J]ail does not have the staff to provide counseling or therapy to mentally ill inmates, and that staffing issues have made it tough just to keep control over all of the inmates."  Doc. # 2 at 14:13-15.  Plaintiffs also note the increases in violent interactions between inmates of up to 20% per year have been reported and that a class action arising out of the deterioration of conditions at Jail is currently being litigated in Hall, et al. v. Mimms, et al., 1:11-cv-2047 LJO BAM.

Based on the conditions noted in Jail, Plaintiffs allege:

> Defendants failed to promulgate appropriate policies, guidelines and procedures, and have failed to rectify improper practices/customs with regard to the mental health treatment of and/or health and safety of COUNTY [J]ail inmates.  The failures include, but are not limited to the medical and psychiatric care of inmates, a failure to monitor or properly supervise inmates following threats of violence, failure to ensure that staff engage in proper and required welfare checks of inmates, a failure to ensure that adequate emergency response measures are taken, a failure to maintain adequate mental health staff for the Jail, and a failure to maintain adequate custodial staff for the Jail.  In addition, Defendants have failed to ensure compliance with the requirements for the protection of the disabled by engaging in practices which prevent severely mentally inmates from being allowed necessary medical and mental health care and protecting other inmates from violence at the hands of mentally ill inmates.

Doc. # 2 16:5-16.

The above quoted paragraph illustrates a considerable gap in facts that could show a causal connection between the existing or non-existing policies, procedures and practices and the harms Decedent experienced.  Essentially, Plaintiffs claims appear to a large extent to be predicated on an assumption that because Decedents Due Process rights were likely violated on February 14, 2012, the violation must have been the result of some unidentified policy or procedure, or lack thereof, or some set of instances where undisclosed past similar Due Process violations were approved or went unaddressed.  The facts alleged suggest the possibility of past problems that may or may not relate to deficiencies in policies or customary practices but any such connection is, at this point, inferential.

Although facts connecting unspecified policies and practices, or the lack thereof, to Decedent's harms are sparse at best, the allegation of a causal relationship on "information and belief" may be sufficient where the facts that might demonstrate the causal connection – such as instances of prior attacks under similar circumstances and corrective actions taken or not taken – are not available to the pleading party prior to discovery.   See Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1439 (9 Cir. 1987) (noting that standards of particularity of pleading "may be

relaxed as to matters peculiarly within the opposing party's knowledge"). Here, Plaintiffs have pointed to newspaper articles acknowledging overcrowding and problems with the maintenance of nonviolent inmate conduct as well as a class action suit that alleges substantially similar problems. The court finds the allegations set forth in the complaint, while conclusory in nature, are sufficient to provide notice to defendants regarding what information from what sources will likely be sought by Plaintiffs during discovery. At the stage of a motion to dismiss, this level of particularity and notice is sufficient where, as here, it may be fairly assumed that Defendants have access to past events and to statements of policy that will either prove or disprove Plaintiffs allegations.

### B. Entity/Supervisor Liability – Failure to Train, Manage, Discipline

Defendants' motion to dismiss Plaintiffs claim for entity and supervisory liability on the theory of failure to supervise, train or discipline has the same fundamental problem; it is out of place in a motion to dismiss where most or all the information pertaining to training and discipline are not available to Plaintiffs prior to discovery. Again, Plaintiffs have alleged "on knowledge and belief" that a laundry list of training, supervision and discipline functions have gone unperformed or performed deficiently so as to have caused Decedent's harm. While this approach is conclusory and sparsely supported with alleged facts, it is sufficient to supply notice to Defendants as to the sorts of information they will need to provide to refute, if they can, Plaintiffs' allegations in a subsequent motion for summary judgment. For the same reasons as discussed above, this conclusory and somewhat formulaic approach to alleging claims for entity and supervisory liability is sufficient where, as here, Defendants may be presumed to be in sole possession of the facts needed to support or refute the claims and discovery has not made those facts available. The court finds that dismissal of Plaintiffs' claims for entity/supervisor liability is inappropriate at this stage of the proceeding.

**III.  Plaintiffs' Claim for Violation of the ADA and California's Unruh Act**

Plaintiffs' fourth claim for relief alleges violation of the ADA but is ambiguous as to what or whose rights under the Act were violated.  Decedent allegedly had a "mild learning disability" qualifying him under the ADA.  Specifically, Plaintiffs quote 42 U.S.C. § 12182(a), as providing "'it shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, direct, or through contractual licensing, or other arrangements, with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to others.'"

Doc. 2 at 26:16-20.  Plaintiffs allege Defendants violated the provisions of ADA by:

> (a)  creating and maintaining a jail without sufficient staffing levels to provide responsible subacute care and supervision to ensure that mentally disabled prisoners do not harm themselves or others, (b)  failing to provide competent health care to mentally disabled and physically disabled detainees/inmates, (c) failing to provide indicated and appropriate classification and housing, (d) failing to provide reasonable accommodations to people with mental disabilities at their clinics, and providing instead quality of care and service that is different, separate, and worse than the service provided to other individuals.
>
> [¶]
>
> [Decedent] was denied the benefits of the services, programs, and activities of the COUNT, FCSD, and FCDPH, medical and mental health care, treatment, follow-up and supervision.  This denial of mental and medical health care, treatment, follow-up and supervision, was the result of his disability.

Doc. # 2 at ¶¶ 87, 89.

Plaintiffs' fourth claim for relief fails for several reasons.  First it is not clear how Decedent's "learning disability" entitled him to any particular *mental health* care or accommodation during the term of his pre-trial detention that was denied by Defendants.  To the extent the court had determined that Decedent should receive an evaluation to determine his ability to stand trial, that right had not been denied; the evaluation simply had not been

accomplished at the time of Decedent's death.  To the extent Plaintiffs seek to assert that

Decedent was in need of some other form of mental health evaluation or treatment that was

denied, there is no indication what that treatment or evaluation should have been.  To the extent

that Decedent's "learning disability" should have been understood to render him particularly

vulnerable to injury or death if co-housed with Cuevas, there are no facts alleged to support such

allegation.  To the extent Plaintiffs seek to allege that Decedent was entitled through ADA to the

adequate mental health treatment of Cuevas, Plaintiffs offer no case or statutory authority that an

individual is entitled through ADA to the treatment or accommodation of another.

Plaintiffs allege that Decedent was housed with Cuevas *because* both allegedly had

pending mental health evaluations.  The facts alleged in the complaint, however, undercut any

claim that Decedent's housing was the product of discrimination against Decedent because of his

disability since the complaint alleges that at least two other prisoners, who are not alleged to

have been protected by the ADA were also housed with Cuevas prior to the time Decedent

arrived.  Further, to the extent Cuevas was, or should have been, known to Defendants to be

particularly violent, Plaintiffs offer no statutory or case-law authority for the proposition that

ADA provided to Decedent any greater protection from the possibility of harm from violently-

inclined inmates than should be provided to any other inmate.  Finally, to the extent Plaintiffs are

seeking to allege that Decedent was denied timely medical treatment following the assault by

Cuevas *because* of his disability, there are absolutely no facts alleged to support such claim.

Plaintiffs' fourth claim also alleges violation of California's Unruh Civil Rights Act, Cal.

Gov't Code § 51.  The Unruh Civil Rights Act prohibits discrimination in any form of public

accommodation based on a number of categories, including disability.  Because Plaintiffs'

complaint fails to allege any discernible act of discrimination that occurred *because* of

Decedent's status as having a learning disability, Plaintiffs' claim under the Unruh Civil Rights

Act is without merit.

The court concludes Plaintiffs' fourth claim for relief fails to allege facts upon which relief under the ADA or under California's Unruh Civil Rights Act can be granted. Plaintiffs' ADA claim will therefore be dismissed with leave to amend.

**IV.  Plaintiffs' State Law Claims**

*A. Wrongful Death*

Plaintiff's fifth claim for relief alleges wrongful death under California common law. Defendants' motion to dismiss presents two basic arguments. First, Defendants contend Defendant County cannot be *directly* liable for common law negligence claims since there is no statutory provision for such claims. See Doc. # 21 at 25:4-10 (citing Cal.Gov. Code § 815(a) for proposition that a public entity may only be held directly liable to the extent provided by state statute and citing Munoz v. City of Union City, 120 Cal.App.4th 238, 251 (2004) for the proposition there is no statute providing for direct entity liability for common law negligence). The second part of Defendants' motion to dismiss contends that evidence is lacking to support claims that either Jail correctional staff or medical staff conduct was so deficient as to give rise to liability.

*1. County (Entity) Liability*

Defendants rely on California Government Code section 844.6, which provides that, notwithstanding any provision under which a "public entity" might be liable, "a public entity is not liable for: (1) and injury proximately caused by any prisoner; [or] (2) an injury to any prisoner." Id. Section 844.6 specifically excepts from this broad immunity claims for "failure to take reasonable action to summon [. . .] medical care" where it is known the inmate in is need of immediate care pursuant to section 845.6. Plaintiffs point to their allegations regarding the failure of Defendant Jail Staff to take reasonable action to provide medical aid and point to their

allegations that the failure is rooted in the failure of supervisory personnel to provide proper policy guidance, supervision and training. Because Plaintiffs have adequately alleged the failure to provide timely or adequate medical response to Decedent's evident immediate needs, it follows Plaintiffs have adequately pled entity liability to the extent that liability is based on the failure to provide medical aid in violation of section 845.6.

### 2. Supervisor Liability

Defendants cite California Government Code § 820.8 which provides that the Correctional Supervisor Defendants are not liable because the code section renders "public employees immune from liability based on the acts or omissions of others." As the court understands Plaintiffs' complaint, the fifth claim for relief, like the second and third, allege the direct participation of the supervisory Defendants in Plaintiffs' harms based on the failure to carry out various managerial functions to prevent the harm, including adequate discipline, training, supervision and the failure to promulgate appropriate policies. Thus there is no apparent applicability of section 820.8. In the alternative, Defendants contend that "numerous courts have held that because such claims [as negligence in training, supervision and staffing are], in reality, claims against the entity itself, a plaintiff cannot pursue a vicarious liability theory." Doc. # 21 at 26:16-18.

Defendants cite three opinions from this District that support the limited proposition that claims against supervisors for deficient training, supervision and staffing *may* amount to efforts to plead around entity immunity and may therefore be barred by immunity provided by section 844.6. However, Defendants effort to shield the supervisory Defendants from liability in the facts of this case fail for two reasons. First, even if Plaintiffs' allegations regarding conduct of the supervisory Defendants were merely an attempt to plead around entity liability, as discussed previously, section 844.6 provides no immunity where a claim for failure to provide a reasonable

response to a known immediate need for medical care is alleged.  Since there is no immunity shielding the entity, it follows that there is no statutory immunity shielding the supervisors.  Second, and perhaps more important, Plaintiffs allege that the supervisory Defendants condoned known constitutionally deficient conduct and were responsible for establishing "customs and practices" that resulted in Decedent's harms.  To the extent Defendants are suggesting that the cases cited include as "essentially entity functions" acts that condone constitutionally deficient conduct, the court simply disagrees.  The conduct Plaintiffs' complaint describes as deficient conduct by Jail and healthcare supervisors lies, at least to some extent, outside the scope of negligent hiring, supervision and staffing as addressed by the cases cited by Defendants.

The court concludes that at this stage of the proceedings, Defendants have failed to establish that the supervisory Jail employees or the supervisory Medical Care officials are immune from Plaintiffs' claim for wrongful death as a matter of law.

### 3. Individual Non-Supervisory Jail and Medical Responders

Defendants assert two defenses against liability for acts of Jail staff or medical response personnel who are not supervisors.  First, Defendants contend that the classification and placement of an inmate is an activity involving the exercise of discretion.  Pursuant to California Government Code, section 820.2, "'[e]xcept as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of discretion vested in him, whether or not such discretion be abused.'"  Doc. # 21 at 27:2-4 (quoting Cal. Gov't Code § 820.2).  Defendants cite Haley v. County of Del Norte, 2009 WL 3568897 (N.D. Cal. 2009) at * 10 for the proposition that the activity of classification and placement of inmates is inherently discretionary in nature.  Defendants cite a recent case from this court, Cotta v. County of Kings, 1:13-cv-0359 LJO SMS, for the proposition that the decision of a correctional officer to place an inmate in a particular cell with a

particular inmate does not involve discretion at the level of the correctional officer.

The court has reviewed both cases.  The <u>Haley</u> decision by the Northern District fails to support Defendants' contention for two reasons.  First, as Plaintiffs note, the decision in <u>Haley</u> does not represent a decision on the merits of the applicability of Section 820.2 because the plaintiff in that case did "not dispute the discretionary nature of prisoner housing decisions . . . ." and thus waived the claim of immunity."  <u>Haley</u>. 2009 WL 3568897 at * 10.  Any opposition to the defendant's assertion of immunity for discretionary acts in Haley was therefore waived.  Second, the defendants on whose behalf the immunity provided by Section 820.2 was being asserted were the entity and a supervisory Defendant who arguably made decisions at the policy level; unlike the individual Defendant or Defendants who, in this action, made the decision to house Decedent together with Cuevas.

On the other hand, the court finds the decision in <u>Cotta</u> to be much more on point.  The decision in <u>Cotta</u> relied upon, and quoted extensively from, the decision in <u>Johnson v. State of California</u>, 69 Cal.2d 782 (1968), which addressed at some length the issue of what sorts of functions constitute the exercise of "discretion" for purposes of immunity under Government Code section 820.2.  The <u>Johnson</u> decision, which is quoted at length in <u>Cotta</u>, can be summarized as holding that discretion, for purposes of immunity, is exercised at the level of policy decision making.  <u>See Johnson</u> 69 Cal.2d at 795 ("Immunity for 'discretionary' activities serves no purpose except to assure that courts refuse to pass judgment on *policy* decision in the province of coordinate branches of government.  Accordingly, to be entitled to immunity the state must make a showing that such a *policy* decision, consciously balancing risks and advantages, took place.  The fact that an employee normally engages in 'discretionary activity' is irrelevant if, in a given case, the employee did not render a considered decision.").

While it is true that the decision regarding what cell to place an inmate in may require the

consideration of a number of factors, it does not require decision making at the level of policy

formulation.  Using the analysis in <u>Johnson</u> as a template, the *policy* decision in this case was the

decision to incarcerate Decedent prior to trial.  The obligation of a Jailer to take reasonable steps

to assure that a detainee does not suffer injury or death at the hands of another inmate is

constitutional.  <u>Farmer v. Brennan</u>, 511 U.S. 825, 833 (1970).  Therefore, once the decision was

made that Decedent was to remain in custody pretrial, the considerations necessary to prevent

harm to Decedent during the term of his pretrial detention were ministerial in nature, not

discretionary.  The immunity conferred by Section 820.2 does not apply where, as here, the Jail

officer who placed Decedent had the constitutional obligation to take reasonable steps to prevent

the injury that occurred.

Defendants also contend that both Jail and healthcare personnel responded reasonably to

Decedent's need for medical attention.  Defendants cite Cal. Gov. Code § 845.6 as follows:

"'[n]either a public entity nor a public employee is liable for injury proximately cause by the

failure of the employee to furnish or obtain medical care for a prisoner in his custody; but, . . . a

public employee and the public entity where the employee is acting within the scope of his

employment, is liable if the employee knows or has reason to know that the prisoner is in need of

immediate medical care. . . .'"  Doc. # 21 at 27:21-28.  Defendants simply assert that "[t]he facts

pleaded by Plaintiffs do not state a valid claim."  The court disagrees for the reasons discussed

above in regard to Plaintiffs' first claim for relief.  It is the court's opinion that Plaintiffs' have

adequately alleged facts upon which a finder of fact could determine that the individual medical

and correctional officers at the scene acted with deliberate indifference to Decedent's immediate

medical needs, which is sufficient under the circumstances to state a claim for wrongful death.

### B. *Survivorship Claim (Sixth Claim for Relief)*

Under California common law survivorship claims include any claims to which a

deceased would have been able to bring on his or her own behalf *except* that, pursuant to California Code of Civil Procedure, section 377.34, the representative who brings the survivorship claim cannot recover for the deceased's pain, suffering or disfigurement. Defendants argue that, under the facts of this case, the only damages that Decedent's representative could claim in a survivorship claim would be the costs of Decedent's hospitalization prior to his death.  Defendants contend that it is not conceivable that Decedent's estate will be billed for the costs of Decedent's medical care since Decedent remained in the custody of the County until he died.

Plaintiffs do not allege that there is, or might conceivably be, any claim against Decedent's estate for the cost of his medical care.  Rather, they cite Hanif v. Housing Authority of Yolo County, 200 Cal.App.3d 635 (1988) for the proposition that "a person injured by another's tortuous conduct is entitled to recover the reasonable value of medical care and services reasonably required and attributable to the tort."  Id. at 640.  Thus, Plaintiffs contend Decedent's representative is entitled to recover the value of Decedent's medical care even though the cost of that care has not, and is not expected to, fall on Decedent's estate.  The proposition Plaintiff cites Hanif to support comes from the California Supreme Court case of Helfend v. Southern California Rapid Transit Dist., 2 Cal.3d 1 (1970).  The liability of a tortfeasor to a plaintiff for damages paid by a third party is called the "collateral source rule." The collateral source rule was the principal topic of concern to the Helfend court, which expressed the rule thus:  "if an injured party receives some compensation for his injuries from a source *wholly independent* of the tortfeasor, such payment should not be deducted from the damages which the plaintiff would otherwise collect from the tortfeasor.  Id. at 6 (italics added). The policy purpose behind the collateral source rule is to "encourage citizens to purchase and maintain insurance for personal injuries and for other eventualities."  Id. at 10.  In other words,

where the victim of a defendant's negligence has invested some portion of his income on insurance premiums, the tortfeasor should not benefit by being able to claim offset of damages made available by the victim's thrift.   Id.

Seen in this light, the collateral source rule's requirement that the collateral source be "wholly independent" of the tortfeasor makes sense.  The unfairness that would arise where the damages that the tortfeasor would normally be required to pay is offset by the victim's thrift does not arise where it is the tortfeasor who is the source of the offset.  To require a tortfeasor to pay the victim the proceeds it has already paid in damages abrogates any incentive for private citizens to purchase their own insurance and results in a windfall for the victim.  The court finds that Plaintiffs may not invoke the collateral source rule unless they plead facts to show that Decedent's medical expenses were, or are likely to be, compensated by a source that is wholly independent of the County of Fresno.  Plaintiffs' complaint does not allege the necessary facts.

In addition, Plaintiffs contend that, while Section 377.34 prohibits recovery in a survivorship claim for pain, suffering or disfigurement, the constitutional claims made under 42 U.S.C. § 1983 do permit such recovery.  The court has difficulty seeing why a claim under California common law should remain viable because the otherwise prohibited recovery is permitted under separate federal law claims.  The court concludes that if Decedent's estate is entitled to be compensated for Decedent's pain and suffering pursuant to any of Plaintiffs' claims under 42 U.S.C. § 1983, the claims may be awarded under those claims.  Plaintiffs' claim for survivorship pursuant to their sixth claim for relief is without merit and will therefore be dismissed with leave to amend.

### C. Plaintiff's Seventh Claim for Relief for Professional Negligence

Plaintiffs' seventh claim for relief is titled "Professional Negligence" and is alleged against Defendants Moreno, Laird, Narayan the "Jail Healthcare Providers," the County, and the

DOE Defendants.  As is characteristic of Plaintiffs' other claims, the seventh claim for relief is pled without the exposition of any facts specific to the claim and merely incorporates by reference all previously alleged facts from which the reader is presumably tasked to infer the exact contours of the claim.  However, with regard to Plaintiffs' claim for "Professional Negligence" the gap between what Plaintiffs suggest they meant to allege in their opposition to Defendant motion to dismiss and what they actually did allege in their complaint is too divergent to allow the court to find that Plaintiffs have set forth an adequate claim.

At paragraph 102 and 103 of the complaint Plaintiffs allege:

> On or about 15 December 2011, and continuing thereafter, [D]efendants rendered professional; services in the diagnosis, treatment and care of [Decedent] and Jose Cuevas for their mental and mental health conditions. ¶ From and after the time of the employment, [D]efendants and each of them, so negligently failed to exercise the proper degree of knowledge and skill in examining, diagnosing, treating and caring for [Decedent] and Jose Cuevas that [Decedent] and Plaintiffs were caused to suffer the injuries alleged above.

Id.

Of some significance to Plaintiffs' claim, the complaint alleges elsewhere that Defendants Nancy POE and Carl COE (collectively termed by the complaint the "Jail Healthcare Providers") were employees of Defendant County whose duty included "the determination of whether inmates suffered from mental health disorders requiring segregation . . . ."  Doc. # 2 at 6:6-8.  There is no indication in the complaint whether these Defendants worked at the Jail or worked offsite and handled referrals for evaluations to be performed at the Jail or offsite.  There are no facts alleged in the complaint that either of these Defendants were ever called to evaluate either Cuevas or Decedent or, if they did evaluate either or both, whether they had the authority to prevent Decedent from being housed with Cuevas or that they had knowledge that Cuevas and Decedent were co-housed.  Plaintiff alleges in his Opposition that Defendants were fully aware of Cuevas's condition, but the complaint sets forth no facts from which it could be inferred that

the Healthcare Defendants had any such knowledge.  Nor is it alleged in either the complaint or

the opposition that the Healthcare Defendants had any authority with respect to the placement of

inmates or that they knew who each inmate's cellmate was.  In short, the complaint fails to

allege any facts that the Healthcare Defendants had performed any duty negligently or that the

negligent performance of a duty was proximately the cause of Decedent's harms.  Plaintiffs'

seventh claim for relief for "professional negligence" will be dismissed with leave to amend.

### D. Plaintiffs' Eighth Claim for Relief for Negligence

Plaintiffs' eighth claim for relief purports to allege common law negligence against the

"Defendant Officers, County, and Does 1 through 50, inclusive."  The substance of Plaintiffs'

eighth claim for relief is set forth at paragraph 108 of the complaint which states, in its entirety:

> At all times herein mentioned, [D]efendants were subject to a duty of care,
> to avoid causing unnecessary physical harm and distress to citizens in the
> exercise of the police and corrections function.  The conduct of
> [D]efendants, as set forth herein, did not comply with the standard of care
> to be exercised by reasonable police and corrections officers, proximately
> causing [P]laintiffs to suffer damages as set forth.

Doc. # 2 at 31:1-5.

So far as the court can discern, neither party deals directly with Plaintiffs' eighth claim

for relief as a discrete issue.  Perhaps this is because the claim provides no information to the

other party or to the court regarding the factual basis of the claim.  Plaintiffs' eighth claim for

relief is a near-perfect example of "a formulaic recitation of the elements of a cause of action"

that, pursuant to Twombly, "will not do."  550 U.S. at 555.  Given the court's prior comments

regarding the need under Rule 8 to bring forward facts into the claims for relief in order to

adequately notify the opposing party why relief should be granted, the failure of Plaintiffs'

eighth claim for relief to satisfy the basic requirements of notice pleading under Rule 8 of the

Federal Rules of Civil Procedure should be self-evident.  Plaintiffs' eighth claim for relief will

be dismissed with leave to amend.

### E.  Plaintiffs' Ninth Claim for Relief – California Civil Code § 52.1

Plaintiffs' ninth claim for relief alleges violation of California Civil Code, section 52.1 (the "Bane Act") against all Defendants.  Pursuant to Cal. Civ. Code §§ 52.1(a) and (b), an individual has a "private right of action against any person, whether acting under color of law or not, who interferes or attempts to interfere 'by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws' of California." M.H. v. County of Alameda, 2013 WL 1701591 (N.D. Cal 2013) at *5.  The substance of Plaintiffs' claim under the Bane Act are set forth at paragraph 110 of the complaint.  That paragraph alleges, in its entirety:

> While [Decedent] was under the sole and exclusive care of Defendants, and in Defendants' custody, he was suffering from a medical and mental health condition which entitled him to the full and equal accommodations, advantages, facilities, privileges, or services for his condition.  Defendants, acting within the scope and course of their employment with Defendant County had a duty to provide [Decedent] medical and mental health accommodations, advantages, facilities, privileges or services for his condition, and violated said statutory mandates herein.

Doc. # 2 at 31:16-22.

"Bane Act liability extends only to rights violations accompanied by 'threats, intimidation or coercion.'" M.H., 2013 WL 1701591 at *6.  The decision in M.H., which Plaintiffs rely heavily upon, focuses on the question whether the "threats, intimidation or coercion" required to state a claim under the Bane Act must be separate and apart from the constitutional right interfered with or whether liability will attach where the constitutional right interfered with is, in part, a constitutional right to be free from application of coercion, intimidation or threats.  That feature of the decision in M.H. is not relevant here because Plaintiffs' claim for violation of the Bane Act leave unspecified what right was alleged to have

been interfered with and where or how threats, intimidation, or coercion were involved, if at all. In reading Plaintiffs' claim for violation of the Bane Act, the court, and by extension the opposing parties, have no indication of what mental health services or accommodation Plaintiffs are referring to, or whether it is Plaintiffs' intention to simply state a claim for failure to provide medical aid by another means.  Again, Plaintiffs' pattern of alleging claims for relief that bring forth no facts but simply recite the elements of a claim is fatal to Plaintiffs' ninth claim.  The court and the opposing parties cannot reasonably be expected to guess what Plaintiffs are trying to allege.  Plaintiffs' ninth claim for relief will be dismissed with leave to amend.

### F.  Plaintiffs' Tenth Claim for Relief

Plaintiffs' tenth claim for relief alleges entity liability against Defendant County for failure to perform a mandatory duty to Decedent pursuant to California Government Code § 815.6 which provides:

> Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty.

Id.

Plaintiffs' tenth claim for relief alleges simply that County failed in its "duty to provide prompt and adequate medical attention to incarcerated persons as provided for by Government Code section 845.6, Title 15 of the California Code of Regulations, as well as the Eighth and Fourteenth Amendments to the United States Constitution."  Doc. # 2 at 32:22-24.  Although the claim itself gives no hint that it seeks to impose liability on Defendant County for anything other than the failure to provide timely medical care for Decedent, Plaintiffs' opposition to Defendants' motion to dismiss indicates that, to a significant extent, Plaintiffs' tenth claim for relief is based on the alleged failure of County to provide mental health care and segregation for

Cuevas.

Based on the plain language of section 815.6, a claim under that statute has three elements; (1) an enactment poses a mandatory duty which was violated, (2) the enactment was intended to protect against the type of harm suffered, and (3) the breach of the duty imposed by the enactment was a proximate cause of the injury suffered.  Janis v. California State Lottery Com., 68 Cal.App.4th 824 (2nd Dist. 1998).  The enactment upon which Plaintiffs place primary reliance is California Government Code § 845.6 which, as previously discussed requires that governmental immunity under the California Tort Claims Act does not apply in cases where an inmate is "in immediate need of medical care" and none is provided.  Id.  The particulars of what level of medical care must be provided with respect to mental health care is set forth at 15 California Code of Regulations §1209.  Pursuant to § 1209(a), the regulation provides that a jail facility must have policies and procedures to provide "(1) screening for mental health problems; (2) crisis intervention and management of acute psychiatric episodes; (3) stabilization and treatment of mental disorders; and, (4) medication support services."  Id.

Plaintiffs cite subdivision 1209(b) for the proposition that an inmate who is "mentally disordered" or to be a danger to himself or others" is to be transported to a designated treatment facility, and allege that Defendant County is liable for the non-transportation of Cuevas to such a facility.  Plaintiffs' claim fails because the duty that is imposed by subdivision 1209(b) is predicated on the identification of mentally disordered inmate pursuant to the steps set forth in subdivision 1209(a).  What Plaintiffs have not alleged is that Cuevas was not evaluated.  It is apparent from the pleadings that Cuevas was subjected to mental health screening and that he was scheduled for further evaluation.  Plaintiffs' complaint allege that Cuevas *should* have been identified as mentally disordered and a danger to himself or others; not that he *was* so identified. That Cuevas may have been improperly or negligently screened does not give rise to a

mandatory duty to transport him to a treatment facility under subdivision 1209(b); that

mandatory duty only arises where, pursuant to the required mental health screening, a

determination is made that the inmate is mentally disordered or a danger to himself or others.

Plaintiffs have not alleged facts sufficient to show that Cuevas had been determined to be

mentally disordered or a threat to himself or others.

Plaintiffs allegations against Defendant County pursuant to section 815.6 fail to the

extent they are premised on the failure of the Jail to transport Cuevas to a qualified treatment

facility.  To the extent Plaintiffs' tenth claim for relief alleges liability against Defendant County

based on the failure to provide prompt medical attention to Decedent, Plaintiffs' complaint does

not specify what enactment defines the County's duty nor does it allege precisely how that duty

was violated.

Plaintiffs' tenth claim for relief will therefore be dismissed with leave to amend.


THEREFORE, pursuant to the foregoing discussion, it is hereby ORDERED that:

1.   Plaintiffs' first claim for relief is Deemed to allege violation pursuant to 42 U.S.C. §

1983 of Decedent's right to be protected from violence at the hands of other inmates

and violation of Decedent's right to timely medical care under the Substantive Due

Process Clause of the Fourteenth Amendment.  So construed, Defendants' motion to

dismiss Plaintiffs' FIRST claim for relief is DENIED.

2.   Defendants' motions to dismiss Plaintiffs' SECOND and THIRD claims for relief are

similarly DENIED.

3.   Defendants' motion to dismiss Plaintiffs' FOURTH claim for relief is GRANTED.

Plaintiffs' FOURTH claim for relief pursuant to the Americans with Disabilities Act

and the Unruh Civil Rights Act are DISMISSED with leave to amend.

4. Defendants' motion to dismiss Plaintiffs FIFTH claim for relief is hereby DENIED with respect to all Defendants.

5. Defendants' motion to dismiss Plaintiffs' SIXTH claim for relief for survivorship is hereby GRANTED.  Plaintiff's SIXTH claim for relief is hereby DISMISSED with leave to amend.

6. Defendants' motion to dismiss Plaintiffs' SEVENTH claim for relief for Professional Negligence is hereby GRANTED.  Plaintiffs' SEVENTH claim for relief is hereby DISMISSED with leave to amend.

7. Defendants' motion to dismiss Plaintiffs' EIGHTH claim for relief for Negligence is hereby GRANTED.  Plaintiffs' EIGHTH claim for relief is hereby DISMISSED with leave to amend.

8. Defendants' motion to dismiss Plaintiffs NINTH claim for relief pursuant to California Civil Code § 52.1 is GRANTED.  Plaintiffs' NINTH claim for relief is hereby DISMISSED with leave to amend.

9. Defendants' motion to dismiss Plaintiffs TENTH claim for relief pursuant to California Government Code §815.6 is GRANTED.  Plaintiffs' TENTH claim for relief is hereby DISMISSED with leave to amend.

10. Any amended complaint shall be filed and served not later than thirty (30) days from the date of service of this order.

IT IS SO ORDERED.

Dated:   December 2, 2013

_____

SENIOR  DISTRICT  JUDGE