1

2

3

4

5

6                     **IN THE UNITED STATES DISTRICT COURT**

7                     **FOR THE EASTERN DISTRICT OF CALIFORNIA**

8

9    **RICHARD PHILLIPS, in his capacity as the**          **1:13-cv-0538  AWI BAM**
     **administrator of the ESTATE OF TROY**
10   **PHILLIPS; TIFFANY PHILLIPS,**

11                     **Plaintiffs,**                      **MEMORANDUM OPINION AND**
                                                            **ORDER ON DEFENDANTS' MOTION**
12                     **vs.**                              **TO DISMISS PORTIONS OF**
                                                            **PLAINTIFFS' SECOND AMENDED**
13                                                          **COMPLAINT**
     **COUNTY OF FRESNO; MARGARET**
14   **MIMS; TOM GATTIE; RICK HILL;**
     **CORRECTIONAL OFFICER L. HER #**                      **Doc. # 92**
15   **9899; CORRECTIONAL OFFICER K.**
     **YANG; CORRECTIONAL OFFICER C.**
16   **DIAZ; CORRECTIONAL OFFICER**
     **CASTRO; JOHN DOE AND RICHARD**
17   **ROE, individually and in their official**
     **capacities as correctional and classification**
18   **officers of the Fresno County Sheriff's**
     **Department; EDWARD MORENO, M.D.;**
19   **GEORGE LAIRD; PRATAP NARAYAN;**
     **NANCY POE and CARL COE, individually**
20   **and in their official capacities as health care**
     **workers in the Fresno County jail system;**
21   **and DOES 1-50,**

22
                       **Defendants.**
23

24

25          This is an action for damages by plaintiffs Tiffany Phillips and Richard Phillips in his

26   capacity as administrator of the Estate of Troy Phillips ("Plaintiffs") against  defendants County

27   of Fresno ("County"), various officials and officers of the Fresno County Sheriff's Department

28

and various healthcare workers employed by the Fresno County (collectively, "Defendants"). This action arises out of the death of Troy Phillips ("Decedent") as a result of injuries he sustained at the hands of a cell-mate while in the custody of the Fresno County Sheriff's Department as a pre-trial detainee.  Currently before the court is Defendants' motion to dismiss portions of Plaintiffs' Second Amended Complaint ("SAC") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.   Federal subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331.  Venue is proper in this court.

**PROCEDURAL HISTORY – CLAIMS FOR RELIEF**

The original complaint in this action was filed on April 15, 2013.   On December 3, 2013, the court partially granted Defendant's motion to dismiss with leave to amend.  Doc. # 34.  A first amended complaint was filed on December 31, 2013, and again the court partially granted Defendants' motion to dismiss.  Doc. # 49.  As a result of the partial granting of the prior motions to dismiss, Plaintiff's original ten claims for relief have been narrowed to five. Plaintiff's SAC alleges three claims for relief for violation of rights under the Due Process Clause of the Fourteenth Amendment in violation of 42 U.S.C. § 1983, and two claims under California statute.  As will be discussed *infra*, the court construes Plaintiffs' first claim for relief to allege violation of Fourteenth Amendment rights against non-supervisory individuals who directly acted or failed to act to protect Plaintiff from harm at the hands of another inmate and acted or failed to act to provide timely provide needed medical assistance.  Plaintiffs' second and third claims for relief are also alleged pursuant to section 1983 for violation of rights under the Fourteenth Amendment.  In Plaintiffs' second and third claims, liability is alleged against the County of Fresno and against named supervisory personnel for failure to enact or enforce policies and procedures leading to Plaintiff's harm and for failure to adequately train and supervise, respectively.  Plaintiff's fourth and fifth claims for relief allege claims against all Defendants for wrongful death and breach of mandatory duty, respectively.

The currently-operative SAC was filed on April 22, 2015, following the court's order granting leave to amend and granting leave to substitute Classification Officer Cinthya Diaz for

one of the Doe Defendants.  Doc. # 85.  The instant motion to dismiss was filed on May 13, 2015.  Plaintiff's opposition was filed on June 15, 2015, and Defendants' reply was filed on June 19, 2015.  The matter was taken under submission without oral argument on June 22, 2015.

## FACTUAL ALLEGATIONS

The facts alleged in Plaintiff's SAC are nearly identical to those alleged in his First Amended Complaint ("FAC") and only the few additions to the allegations will be mentioned here.  Very briefly, Troy Phillips ("Decedent") was arrested on December 15, 2011, on suspicion of second degree burglary and was held as a pretrial detainee from that date until he was killed on February 14, 2012.  During the final portion of his incarceration Decedent was housed in the same cell as Jose Cuevas, an individual who Plaintiffs allege was known to jail personnel as being mentally disturbed and violent.  Decedent was attacked and stabbed in the neck repeatedly by Cuevas using a "grievance" (or golf) pencil on February 14, 2011.  Decedent died that day as a result of wounds sustained.

There are three new facts alleged in the SAC that are worth noting.  First, Plaintiff's SAC adds a paragraph specifying prior conduct of Cuevas that would reasonably have put jail personnel on notice that Cuevas was a mentally unstable and potentially violent individual.  See Doc. # 85 at ¶ 33.  In addition, the SAC alleges one new paragraph alleging facts to show that Decedent was known to jail authorities to be vulnerable and therefore subject to attacks by other inmates because of his "learning disability."  Id. at ¶ 39.  An additional three paragraphs have been added to the SAC to allege facts specifying the role of new Defendant Diaz in classification decisions involving Decedent and in the ultimate decision to house Decedent with Cuevas.  See Id. at ¶¶ 40-42.  Finally, Plaintiffs' FAC adds a paragraph alleging acknowledgement by Defendant Mims in an official statement predating the events complained of in the SAC opining that the jail lacks the ability to provide treatment for inmates with mental health issues or to adequately protect prisoners from such inmates.  Id. at ¶ 58.  In all other respects relevant to the discussion that follows, the allegations set forth in Plaintiffs duplicate word-for-word those set forth in the FAC.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**LEGAL STANDARD**

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure can be based on the failure to allege a cognizable legal theory or the failure to allege sufficient facts under a cognizable legal theory.  Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir.1984).  To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must set forth factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("Twombly").  While a court considering a motion to dismiss must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), and must construe the pleading in the light most favorable to the party opposing the motion, and resolve factual disputes in the pleader's favor, Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969), the allegations must be factual in nature.  See Twombly, 550 U.S. at 555 ("a Plaintiffs' obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").  The pleading standard set by Rule 8 of the Federal Rules of Civil Procedure "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) ("Iqbal").

The Ninth Circuit follows the methodological approach set forth in Iqbal for the assessment of a Plaintiffs' complaint:

> "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

Moss v. U.S. Secret Service, 572 F.3d 962, 970 (9th Cir. 2009) (quoting Iqbal, 129 S.Ct. at 1950).

**DISCUSSION**

Defendants' motion to dismiss sets forth a total of five grounds for dismissal of all or portions of Plaintiff's five claims for relief.  First, Defendants contend Plaintiff's SAC alleges official capacity claims against the supervisory Defendants (Mims, Gattie, Hill, Moreno, Laird, and Narayan) that are duplicative of the civil rights claims alleged against County of Fresno.  Second, Defendants contend Plaintiffs have failed to allege direct participation by the supervisory Defendants in the acts causing harm to Plaintiffs in claims three and four of the SAC.  Third, Defendants contend Plaintiffs have failed to allege specific "Mandatory Duties" owed by the supervisory Defendants to Decedent.  Fourth, Defendants contend Plaintiffs have failed to state any claim against individual Defendants Castro, Yang and Her; and fifth, Defendants contend that Defendant Diaz is entitled to qualified immunity.  The court will consider each contention in turn.

**I.  Entity Defendants Are Construed to be Sued In Their Official Capacities**

The issue of whether Plaintiff's claims against the supervisory Defendants in their *official*  capacities is duplicative of claims against County of Fresno was addressed in the court's order of May 14, 2014, granting in part Defendant's motion to dismiss portions of the FAC.  Doc. # 49 at 5:23-6:11.  There, the court determined the issue was one of construal and the court construed Plaintiff's claims against the supervisory Defendants in their official capacities to be claims against Defendant County of Fresno.  For reasons unknown, Plaintiff's SAC continues to allege claims against the supervisory Defendants in their individual *and official* capacities; however, Plaintiffs admit that the claims alleged to be against the supervisory Defendants in their official capacities are properly construed to be against Defendant County of Fresno.  Since there is no real dispute on the issue, the court will continue to construe Plaintiff's claims against the supervisory Defendants in their official capacities to be against Defendant County of Fresno.

## II.  Plaintiffs Have Adequately Alleged Integral Participation

Defendant's argument for dismissal of the supervisory Defendants in their individual capacities is predicated on the contention that Plaintiffs' SAC fails to allege the "direct participation" of Defendants Mims, Gattie, Hill, Moreno, Laird and Narayan in the conduct that harmed Decedent.  Plaintiffs' second claim for relief alleges violation of Decedent's rights under the Fourteenth Amendment on a theory that the supervisory Defendants promulgated constitutionally deficient policies and procedures or established constitutionally deficient customs or ratified constitutionally deficient practices.  Plaintiffs' third claim alleges the same liability on a theory of failure to adequately train and supervise.

The court's Order of December 3, 2013, discussed the issue of *entity* liability under Monell v. Dep't of Soc. Services, 436 U.S. 658 (1978), but the closely related issue of liability of the supervisorial Defendants has not been addressed to this point.  The legal standard for the assessment of liability by a supervisory defendant in his or her individual capacity has been stated thus:

> We have found supervisorial liability under § 1983 where the supervisor "was personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation." *Lolli v. County of Orange*, 351 F.3d 410, 418 (9th Cir. 2003) (quoting *Jackson v. City of Bremerton*, 268 F.3d 646, 653 (9th Cir. 2001)).  Thus, supervisors "can be held liable for: 1) their own culpable action or inaction in the training, supervision or control of subordinates;  2) their acquiescence in the constitutional deprivation of which a complaint is made; or 3) for conduct that showed a reckless or callous indifference to the rights of others." *Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000).

Edgerly v. City and County of San Francisco, 599 F.3d 946, 961 (9th Cir. 2010).

Defendants contend that Plaintiffs "have stated no facts alleging that [the supervisorial] Defendants in any way personally participated in the alleged Constitutional [sic] violations against their decedent."  Doc. # 88-1 at 6:20-21.  The court simply disagrees.  Read as a whole,

the SAC describes the responsibilities of each of the supervisorial Defendants with regard to staffing, training, monitoring, disciplining and developing policy for both the jail facility and its medical services component.  The second and third claims for relief allege in rather general terms that these functions were carried out with deliberate disregard for the consequences to inmates, such as Decedent, whose constitutional rights were violated owing in substantial part to deficiencies in staffing, training, monitoring and policy development.  The court's order of December 3, 2013, held that Plaintiffs' pleadings with regard to *entity liability* were sufficient notwithstanding having been alleged in rather general terms because evidence of the particulars of training, policy and custom could reasonably be expected to be in the possession of Defendants and not available to Plaintiffs for purposes of pleading.  See Doc. # 34 at 16:22-17:11 (citing Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1439 (9th Cir. 1987 ) for the proposition that "standards of particularity of pleading 'may be relaxed as to matters particularly within the opposing party's knowledge.'").

The court rejects Defendants' argument for dismissal of the supervisory Defendants for essentially the same reason as was expressed in the December 3, 2014, order.  The court notes that Defendants' reply to Plaintiff's opposition contends that a good deal of discovery has been delivered to Plaintiffs since the court's partial grant of Defendants' motion to dismiss Plaintiffs' FAC.  Defendants contend without any citation to authority that Plaintiff's SAC should be held to reflect the state of Plaintiff's knowledge of the facts supporting the claims against the supervisory Defendants as of the receipt of discovery at the time the complaint was amended. The court rejects this argument for two reasons.  First, the court cannot find any authority for the proposition that discovery modifies the requirement for particularity of pleading under Rule 8 or under recent cases interpreting that rule.  Second, Plaintiffs allege they have adequately responded during discovery with all information pertinent to Plaintiffs' claims against the

supervisory Defendants.  The fact that Defendants are able to contend that they have provided all information in their possession pertaining to Plaintiffs' claims undercuts any argument that they are prejudiced by any lack of specificity in Plaintiffs' SAC.  The basic test of the adequacy of a complaint under Rule 8 is the extent to which it permits the Defendants to understand what is alleged against them and to adequately respond.  Since Defendants contend they have been able to adequately respond to Plaintiff's claims they cannot now contend those claims are pled with insufficient particularity.

The court will deny Defendants' motion to dismiss the supervisory Defendants in their individual capacities.

## III.  Defendants' Issue Regarding "Mandatory Duties" is a Misunderstanding

Defendants' third argument for grounds to dismiss is based on what the court perceives is an erroneous reading of Plaintiffs' third claim for relief.  Plaintiffs' third claim for relief alleges failure of the supervisory Defendants to train, monitor and discipline pursuant to section 1983. Defendants argue that California Government Code § 815.6 provides liability against an *entity* that fails to discharge a "mandatory duty" (that is, a duty specifically imposed by statute) that proximately causes an injury that the mandatory duty was enacted to prevent.  Defendants correctly note that any claim to recover damages under the statute requires that the plaintiff specifically identify the "mandatory duty" that was breached and the statute or regulation that imposed the duty.  However, Plaintiffs' third claim for relief does not attempt to invoke liability under California law nor does it rely on section 815.6.  The "duties" that are mentioned at paragraphs 80 and 81 of Plaintiffs' SAC are not alleged to be specific "mandatory duties" imposed by statute, they are simply the general duties of training and monitoring that may be presumed to be imposed by job description on most supervisorial personnel, including those being sued in this action.

It is true that Plaintiffs' SAC does not allege a one-to-one correlation between specific duties to train and monitor and specific Defendants. However, this lack of specificity is covered by the court's previous discussion regarding the claims against the supervisory Defendants in their individual capacities and the court has determined that those claims are sufficiently alleged.

The court finds Defendants are not entitled to dismissal of any parties or claims based on failure to identify "mandatory duties" within the meaning of California Government Code § 815.6.

**III. Defendants Castro, Yang and Her**

Plaintiffs' SAC refers to Defendants Castro, Yang and Her collectively as the "Officers." Defendants move to dismiss the claims against Officers on the ground that Plaintiffs' SAC fails "to identify any legal duty these Defendants owed to the Plaintiffs, what actions or inactions of theirs (independently or collectively) breached that duty, and the rights of Plaintiffs that were violated." Doc. # 88-1 at 7:22-24. Again, the court disagrees. The court agrees with Defendants to the extent Defendants may contend that the SAC does not state facts sufficient to support a claim that Officers (excluding Diaz) violated Decedent's Fourteenth Amendment rights by co-housing Decedent and Cuevas. This is in part because Plaintiffs' SAC alleges for the first time that Defendant Diaz is the Defendant responsible for the decision to change Decedent's classification and to house him with Cuevas.

However, to the extent that Defendants contend that Officers are entitled to dismissal of Plaintiffs' fourth claim for relief because the SAC identifies no duties owed to Plaintiff or breach of those duties, the court must disagree. Plaintiffs' SAC clearly states in the Factual Background portion of the SAC that Officers were notified of Cuevas's assault on Decedent, that they did not respond timely, and that when they did arrive on the scene, they failed to timely summon or render medical assistance despite the obvious need. The duties alleged to have been breached

are set forth in Plaintiffs' first claim for relief at paragraph 71.  While not all Officers may be

implicated in the violation of all the duties alleged in association with the violation of

Decedent's Fourteenth Amendment rights, the list clearly refers to the failure of Officers to

secure prompt medical attention and to protect Plaintiffs and Decedent from the harms he

suffered.  As above, the court finds the current formulation of Plaintiffs' claims against the

Officer Defendants to be adequate for purposes of the pleading standards required under Rule

8(a).

The court concludes that Defendants are not entitled to dismissal of Defendants Castro,

Yang and Her.

**V.  Qualified Immunity**

Defendants' motion to dismiss Defendant Diaz on the ground of qualified immunity

adequately sets forth the legal requirements for determination of qualified immunity.

Defendants' argument is quite brief:

> Officer Diaz's conduct, as currently pled, does not rise to the level of a
> constitutional violation.  Even of Decedent's estate were able to properly
> plead facts supporting a constitutional violation, Officer Diaz would be
> entitled to qualified immunity since it would not have been clear to a
> reasonable officer that the classification of [Decedent] created a
> substantial risk of harm to him.

Doc. # 88-1 at 8:11-14.  Defendants clarify their argument in their reply somewhat by alleging:

> Plaintiffs' SAC does not allege that officer Diaz housed [Decedent] and
> Mr. Cuevas together.  In fact, the SAC does not allege Officer Diaz had
> anything to do with Mr. Cuevas' housing assignment.  Without allegation
> that Officer Diaz made the decision to house [Decedent] and Mr. Cuevas
> together , the constitutional right of [Decedent] to be free from violence at
> the hands of Mr. Cuevas does not arise.

Doc. # 92 at 3:15-19.

Plaintiffs' factual allegations with regard to Cruz's role in the decision to co-house

Decedent and Cuevas are set forth at paragraphs 41 and 42 of the SAC.  Basically, Plaintiffs

allege that Decedent was "involved in a series of altercations" due to the perception of his

mental vulnerability by other prisoners and was therefore classified as requiring isolated housing on January 22, 2012.  Doc. # 85 at ¶39.  At paragraph 41, Plaintiffs allege that the following day Diaz reclassified Decedent as qualified for medical lockdown housing "due to having a compatible cellmate."  Id. at ¶41.  Decedent was attacked and killed by Cuevas on February 14, 2012.

The legal requirements for qualified immunity are well established.  To determine whether qualified immunity applies, the threshold question is whether, in the light most favorable to the party asserting injury, the facts show an officer's conduct violated a constitutional right.  Saucier [v. Katz, 533 U.S. 194, 201 (2001)]; Robinson v. Solano County, 278 F.3d 1007, 1012 (9th Cir. 2002) (en banc).  If no constitutional right was violated, immunity attaches and the inquiry ends.  Saucier, 533 U.S. at 201.  If a constitutional right would have been violated were a plaintiff's allegations established, the next step is to ask whether the right was clearly established in light of the context of the case.  Id.  Finally, the contours of the right must be clear enough that a reasonable officer would understand whether this or her acts violate that right.  Id. at 202.

Plaintiffs' SAC alleges that Officers had at least constructive notice that the housing of Decedent whose vulnerabilities or disabilities were likely to provoke violent altercation with Cuevas, an inmate who had a demonstrated propensity toward violence, constituted deliberate indifference toward Plaintiff's Fourteenth Amendment right against harm at the hands of other inmates.  While Plaintiffs' SAC does not directly allege that Diaz made the decision to house Decedent with Cuevas, Plaintiff's did allege that Decedent was housed with Cuevas following a determination that they would be compatible because they were both awaiting examination to determine whether mental problems were present.  It is reasonable to infer that the "compatible cellmate" mentioned by Diaz in her reclassification of Decedent is, in fact, a reference to

Cuevas.  Since at this stage of the proceedings the court must make all reasonable inferences in favor of the non-moving party, the court finds that the SAC alleges that Diaz made the decision that resulted in the placement of Decedent and Cuevas in the same cell.

The court must conclude that Defendants have not adequately supported their motion for dismissal of Diaz on a theory of qualified immunity.  Defendants do not dispute that a decision that houses two prisoners together in conscious disregard for the safety of one of the prisoners may constitute a Fourteenth Amendment violation.  The court has found that Defendants' contention that Plaintiffs have failed to allege facts connecting Diaz with the decision to house Cuevas and Defendant together is simply contrary to a fair reading of the facts alleged in the SAC.  The court also finds Defendants' contention that "it would not have been clear to a reasonable officer that the classification of [Decedent] created a substantial risk of harm to him" is unsupported by argument, facts or law.  In short, the court finds it cannot grant Defendants' motion to dismiss Defendant Diaz at this point in the proceedings because evidence that would permit such dismissal is has not been made available to the court.


THEREFORE, for the reasons discussed above, it is hereby ORDERED that Defendants' motion for partial dismissal of parties and/or claims is DENIED.


IT IS SO ORDERED.

Dated:   July 30, 2015                                  _____

                                                       SENIOR  DISTRICT  JUDGE